UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISRAEL RIVERA<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | Case No.: 1:14-cv-01564-BAM<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Israel Rivera ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1] The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 7, 8). For that reason, the action was reassigned to the Honorable Barbara A. McAuliffe for all purposes. See 28 U.S.C. §636(c); Fed. R. Civ. P. 73; see also L.R. 301, 305.

# BACKGROUND

On September 13, 2006, Plaintiff filed a prior application for supplemental security income and disability insurance benefits. AR 101.[2] Plaintiff's applications were denied initially and on reconsideration. AR 101. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Christopher Larsen held a hearing on July 7, 2008, and issued an order denying benefits on September 3, 2008. AR 101-08.

On June 6, 2011, Plaintiff again applied for supplemental security income, alleging disability beginning September 1, 2008. AR 23. The Commissioner initially denied the claims on October 17, 2011, and upon reconsideration, on May 30, 2012. AR 40-73. On June 15, 2012, Plaintiff filed a timely request for a hearing, which the ALJ held on May 30, 2013. AR 40-73. On July 22, 2013, ALJ Sharon L. Madsen denied Plaintiff's application. AR 23-34. On July 31, 2014, the Appeals Council denied review. AR 1-6. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on May 30, 2013, in Fresno, California. AR 42. Plaintiff appeared and testified with the assistance of an interpreter. AR 42. He was represented by attorney Jeffrey Milam. AR 42. Impartial Vocational Expert ("VE") Judith L. Najarian also testified. AR 42.

Plaintiff was born on July 4, 1972, and was 38 years old at the time of the hearing. AR 33. Plaintiff completed the 10th grade but went no further. AR 46. Plaintiff testified that he spoke some English but did not understand it very well. AR 42. Plaintiff lives at home with his wife and his two children.

With respect to daily activities, Plaintiff stated that he sometimes needed help dressing and showering. AR 46. He did not perform any household chores, beyond occasional sweeping, and he did not shop. AR 47. Plaintiff does however attend church twice a week. AR 56. When asked about his previous work, Plaintiff explained that before injuring his back he did field work picking fruit such as oranges, grapes, and plums. AR 48. He also pruned trees. AR 49.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

With respect to his impairments, Plaintiff testified that he primarily suffers from back pain which requires him to lie down and elevate his feet to relieve the pain. AR 49. The pain goes from the neck all the way down his back. AR 51. Plaintiff testified that he also had daily back spasms. AR 63. Plaintiff takes narcotic pain medication and anti-inflammatories for his back impairment. AR 50. Sometimes Plaintiff will also take hot showers to relieve pain in his back. AR 50. Doctors have administered injections for Plaintiff's back symptoms, but he testified that they did not help the pain. AR 51. Plaintiff also uses an inhaler for asthma as needed. AR 50. Plaintiff also testified that he takes water pills to prevent swelling in his legs. The water pills cause him to urinate frequently. AR 61. Plaintiff also suffers from carpal tunnel syndrome in his hands, which causes weakness. AR 64.

Plaintiff's demeanor at the hearing was uncomfortable. The ALJ allowed Plaintiff to stand at the hearing because his feet were trembling. AR 51. To help Plaintiff's foot pain, he underwent injections in his heels. AR 62. Plaintiff testified that he could lift and carry ten pounds, sit and stand for about 10 minutes and walk about 3 blocks. AR 52-53. Plaintiff elevates his feet three times a day for an hour. AR 61. Plaintiff also uses a walking stick daily. AR 53. Plaintiff also experiences difficulty bending and could climb stairs slowly. AR 53.

When asked about his mental impairments, Plaintiff stated that he suffers from anxiety because he is "unable to do anything." AR 53. Plaintiff testified that his anxiety made him feel sad and cry. AR 54. Plaintiff's doctor prescribed medicine for his mental health treatment, but Plaintiff testified that it only helps a "little bit." AR 54. Although Plaintiff's doctors have discussed sending Plaintiff to counseling, Plaintiff has not made arrangements to attend. AR 54. Plaintiff "teared up" on two occasions during the hearing. AR 56. He additionally testified that he cries approximately three times a day. AR 56.

Thereafter, the ALJ elicited testimony of the vocational expert ("VE") Judith L. Najarian. AR 65. The VE testified that Plaintiff's past work was consistent with farm worker, fruit II, DOT #403.687-010, medium, SVP 2, performed as heavy. AR 65. The VE was asked to opine regarding an individual of Plaintiff's age, education, limited English, and previous work experience who could: lift and carry 50 pounds occasionally, 25 pounds frequently; sit, stand, walk 6 to 8 hours a day; frequently stoop, crouch, crawl, kneel, balancing; and carry out simple, repetitive tasks. AR 65-66. The VE

3

testified that the hypothetical individual could perform Plaintiff's past relevant work as it was generally performed. AR 66.

In a second hypothetical question, the ALJ asked the VE to consider an individual of Plaintiff's age, education, limited English, and previous work experience who could: lift and carry 20 pounds occasionally, 10 pounds frequently; sit, stand, walk 6 to 8 hours a day; occasionally stoop, crouch and reach overhead; frequently crawl, kneel, balancing and climb; and never climb ladders, ropes or scaffolds. AR 66. The VE testified that the individual could perform the light jobs of: bottle line attendant, DOT 920.687-042, light, SVP 1; bench assembly, DOT 706.684-042, light, SVP 2; nut chopper, DOT #521.686-046, light, SVP 2. AR 66-67.

The third hypothetical consisted of an individual of Plaintiff's age, education, limited English, and previous work experience who could: lift and carry 20 pounds occasionally, 10 pounds frequently; sit, stand, walk 6 to 8 hours a day.  AR 67. The worker must have a sit/stand option. AR 67. The worker had the ability to: occasionally stoop, crouch, crawl, climb, kneel; never climb ladders, ropes or scaffolds; and could only perform simple, routine tasks. AR 67. The VE responded that sit/stand jobs require more English than Plaintiff possesses therefore sedentary was more appropriate. AR 67. The VE identified the jobs of: ampoule sealer, DOT #559.687-014, SVP 2; Assembler, DOT #734.687-018, SVP 2; and Nut Sorter, DOT #521.687-086, SVP 2. AR 68.

The ALJ later modified the third hypothetical to an individual who could only complete sedentary work. AR 68. The VE testified that the previously listed jobs of assembler; nut sorter; or ampoule sealer were available in sufficient numbers at the sedentary level.  AR 68. The vocational expert opined, however, that if the hypothetical individual would need 2 to 4 breaks of 30 minutes per day, those limitations would render the individual unemployable. AR 51-52.

Finally, Plaintiff's attorney questioned the VE regarding the jobs a worker who required special instructions on a consistent basis could perform.  AR 69. The VE testified that all work was precluded.  AR 70. The attorney also asked if a worker who was off task 10 to 15 percent of the day could perform work as contemplated by the social security regulations. AR 69. The VE testified no such work was available.  AR 69.

**Relevant Medical Evidence**

The entire medical record was reviewed by the Court. AR 239-524. The medical evidence will be referenced below as necessary to this Court's decision.

### THE ALJ'S DECISION

The ALJ found that Plaintiff was not disabled. AR 23. In reaching this conclusion, consistent with *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988) and Acquiescence Ruling 97-4(9), the ALJ considered whether Plaintiff established changed circumstances from the date his prior application for disability was denied, on September 3, 2008. AR 23. The ALJ found that Plaintiff's allegations of depression/anxiety, calcaneal spurs, and obesity constituted changed circumstances warranting re-evaluation of his impairments under the five-step sequential evaluation set out in 20 C.F.R. § 416.920(a)(4).

Using the Social Security Administration's five-step sequential evaluation process, first, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 6, 2011. AR 25. Second, the ALJ found that Plaintiff had severe impairments of lumbar and thoracic degenerative disc disease, obesity, calcaneal spurs, depression, and anxiety. AR 26. Third, the ALJ found that these impairments did not meet or medically equal a listed impairment under 20 C.F.R. pt. 404, subpt. P, app. 1. AR 26. The ALJ concluded that Plaintiff maintained the ability to perform light work, including that he could lift and carry 20 pounds occasionally and 10 pounds frequently. He is also able to stand and walk 6 to 8 hours in an 8-hour workday and sit 6 to 8 hours in an 8- hour workday. Plaintiff however needs an option to sit or stand, and he will be on his feet 1/3 of the workday. He can occasionally stoop, crouch, crawl, climb, and kneel but is unable to climb ladders, ropes, or scaffolds. In addition, Plaintiff is limited to the performance of simple routine tasks. AR 27-28. Based on these limitations, Plaintiff could not return to his past relevant work, but Plaintiff could perform work as an ampoule sealer, assembler, and nut sorter. Accordingly, the ALJ concluded that Plaintiff had not been under a disability from June 6, 2011, through the date of the decision. AR 34.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this

1  Court must determine whether the decision of the Commissioner is supported by substantial evidence.
2  42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,
3  402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112,
4  1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as
5  adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The record as a
6  whole must be considered, weighing both the evidence that supports and the evidence that detracts
7  from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing
8  the evidence and making findings, the Commission must apply the proper legal standards. *E.g.,*
9  *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's
10 determination that the claimant is not disabled if the Secretary applied the proper legal standards, and
11 if the Commission's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health*
12 *and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **DISABILITY STANDARD**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff challenges whether: (1) the ALJ properly considered the medical evidence provided by the treating and examining physicians including the opinions of treating physician Dr. Kishwar Gill; and consultative psychiatric examiners Drs. Nikkel, and Prince; and (2) the ALJ provided legally sufficient reasons supporting her adverse credibility finding.

# DISCUSSION[3]

### A. The ALJ Properly Considered the Medical Evidence

Plaintiff argues that the ALJ improperly discredited portions of the medical opinions of treating physician Dr. Gill and examining psychiatrists Drs. Nikkel and Prince. The Commissioner responds that the ALJ properly considered the medical evidence and found Plaintiff not disabled. The Court concludes that ALJ properly weighed the medical evidence.

#### 1. Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). *See also*, 20 C.F.R. § 404.1527(c)(1)-(2). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(c)(2).

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id*. § 404.1527(c)(2)(i)-(ii). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)-(6).

**2.    Kishwar Gill, M.D.**

Plaintiff began treating with Dr. Gill in 2009. In January 2012, July 2012, and January 2013, Dr. Gill provided a doctor's certificate for Plaintiff's state disability benefits. AR 422, 437, 515-17. Dr. Gill opined that Plaintiff would not be able to sustain work at any exertional level in all three of these assessments. Specifically, in January 2012, Dr. Gill opined that Plaintiff would be disabled until April of that year. AR 422. In his July 2012 report, Dr. Gill opined that Plaintiff was unable to work sitting, standing, or walking for even short periods of time. AR 29, 437. In the January 2013 questionnaire, Dr. Gill opined that Plaintiff was able to lift only 5 to 10 pounds, and could not sit, stand, or walk during an 8-hour workday. AR 515-16.

The ALJ assessed Dr. Gill's opinion as follows:

> I afford no weight to these opinions because the objective findings, which showed full motor strength and no atrophy to the lower extremities, do not support them. In addition, the inability to sit, stand, or walk for any amount of time during an 8-hour workday is inconsistent with the record, including Dr. Rios' report, which showed a normal gait and an ability to get on and off an examination table without assistance. The significant limitations are also inconsistent with the claimant's admitted ability to walk three blocks at one time (hearing testimony) and to help with limited household chores.
> AR 29.

### 3. Psychiatric Consultative Examiners

In assessing Plaintiff's mental health impairments the ALJ noted at the outset that Plaintiff did not allege any suffering from a mental impairment in his disability report. AR 31. Relatedly, no treating physician provided an opinion regarding Plaintiff's mental residual functional capacity. However, on September 17, 2011, Nancy Nikkel, Ph. D performed a psychiatric evaluation. Dr. Nikkel opined that Plaintiff was unable to perform even simple repetitive tasks, unable to perform work activities on a consistent basis, had a poor ability to maintain regular work attendance, poor ability to complete a normal workday, and was unable to deal with usual workplace stress. AR 31, 381-82. Conversely, Dr. Nikkel also noted that upon examination Plaintiff's thought processes were logical and goal-oriented, speech was normal, and articulation was normal. AR 379.

The ALJ assessed Dr. Nikkel's opinion as follows:

> I gave no weight to this opinion because it is not supported by objective evidence, namely the lack of any mental health treatment or counseling. The opinion is further discounted because Dr. Nikkel's own report indicated the claimant may have been exaggerating symptoms. Accordingly, I gave no weight to this opinion.

AR 31.

The record also contained opinions regarding Plaintiff's mental capacity from his prior application for SSI benefits. In particular, on July 23, 2010, Dr. William Prince performed a consultative psychiatric evaluation and opined that Plaintiff was not impaired in his ability to adequately perform one or two simple repetitive tasks. Dr. Prince also opined that Plaintiff was moderately impaired in his ability to accept instructions from supervisors and to interact with co-workers and the public, but was not impaired in his ability to maintain regular attendance in the workplace. AR 291. He further opined that Plaintiff was moderately impaired in his ability to perform work activities on a consistent basis without special or additional instruction, but was not impaired in his ability to deal with the usual stress encountered in a competitive workplace. AR 291.

With respect to Dr. Prince's opinion, the ALJ found as follows:

> I give little weight to this opinion because the lack of mental health treatment or counseling and his logical and goal-oriented thought process does not support these limitations. The opinion is also discounted because Dr. Prince did not provide a definition for the term moderate. AR 32.

### 4. Analysis

Plaintiff first argues that the ALJ's rejection of Dr. Gill's treating opinion was not based on legally sufficient reasons. Plaintiff claims that the ALJ erroneously rejected Dr. Gill's opinion because it was inconsistent with a 2009 treatment note. Plaintiff argues this outdated treatment note is not sufficient evidence in which the ALJ can rely. Second, Plaintiff claims that the ALJ erred when he discounted Dr. Gill's opinion based on objective evidence demonstrating that Plaintiff lacked "pedal edema." (Doc. 14 at 14). According to Plaintiff, he primarily suffers from back pain and therefore findings related to his leg swelling are largely irrelevant. (Doc. 14 at 14). The Court disagrees. The ALJ reviewed the entire medical record and discounted Dr. Gill's opinion based on its overall inconsistency with the medical record and not solely a single treatment note. Further, the lack of pedal edema was a critical factor in assessing Dr. Gill's opinion. For those reasons, the ALJ provided specific and legitimate reasons for rejecting Dr. Gill's opinion that were supported by the record.

As the ALJ explained, the overall objective medical evidence materially contradicted Dr. Gill's opinions. The ALJ cited the contradictory evidence by examining physician Thomas Rios, M.D. demonstrating that upon examination Plaintiff had no tenderness, a normal range of motion, and no pedal edema in the bilateral extremities. AR 29, 365. During an internal consultative exam, Dr. Rios noted that Plaintiff was able to get on and off the examination table unassisted. His gait was normal, and he had full strength with normal muscle bulk and tone. AR 29, 375. The ALJ noted this objective evidence directly contradicted Dr. Gill's opinion that Plaintiff was unable to stand or walk for any period of time. The ALJ also noted that, contrary to Dr. Gill's opinion, diagnostic images of Plaintiff's cervical spine, including an x-ray taken in May 2011 and an MRI from November 2011 were both normal. AR 29, 419-20, 499, 514. The ALJ appropriately noted that Dr. Gill's opinions of extreme functional limitations were inconsistent with the normal objective findings.

The ALJ additionally noted that Dr. Gill's opinions were so extreme that they were contrary to Plaintiff's own testimony. AR 29. Upon examination, Plaintiff admitted to Dr. Rios that he was able to help with limited household chores. AR 373. Consistent with those the statements to Dr. Rios, Plaintiff additionally testified at the hearing that he was able to walk three blocks at one time. AR 53. Plaintiff's stated ability to perform even these limited activities of daily living exceeded Dr. Gill's

opinion that Plaintiff could not sit, stand, or walk for any amount of time during an 8-hour workday. AR 515-16. Based on these inconsistencies, the ALJ gave Dr. Gill's opinion no weight. AR 29.

An ALJ may reject or discount a treating physician's opinion if the opinion was not based on objective medical evidence, inconsistent with the physician's own medical records, or dramatically more restrictive than the opinion of any other medical source. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Gill's conclusory findings that Plaintiff could not sit, stand, or walk was dramatically restrictive in light of the mildly objective findings identified by Dr. Gill's treatment notes, the objective evidence in the record, and the examination of consultative physician Dr. Rios. For these reasons, the ALJ was entitled to discount Dr. Gill's opinion.

To the extent that Plaintiff argues that the ALJ failed to properly weigh the medical evidence with respect to his lack of pedal edema, Plaintiff's argument is equally unpersuasive. Plaintiff's lack of pedal edema serves as another credible reason to discount Dr. Gill's opinion for inconsistency with the objective medical evidence. While Dr. Gill opined that Plaintiff could not walk or stand, the evidence of the record demonstrated that Plaintiff lacked pedal edema. AR 421. Further, the examining physician noted that upon examination Plaintiff was able to get on and off the examination table unassisted. His gait was normal, and he had full strength with normal muscle bulk and tone. AR 29, 375. Given its inconsistency with the medical record, the ALJ was entitled to discount Dr. Gill's opinion, in part, for its inconsistency with Plaintiff's lack of pedal edema.

As to the opinions of consultative psychiatrists Drs. Nikkel and Prince, the ALJ correctly found at the outset that the record does not reflect a significantly limiting mental impairment. Along with that finding, the ALJ gave no weight to the opinion of Dr. Nikkel because it was unsupported by the objective evidence, including the lack of any mental health treatment or counseling. AR 31. The record demonstrated that when asked about his mental health treatment at the hearing, Plaintiff indicated that he did not have any plans to attend counseling or related mental health treatment. AR 54. Further, at his psychiatric evaluation with Dr. Nikkel, Plaintiff noted that he had been taking depression medication for "5-6 months." AR 377. He denied previous psychiatric hospitalizations, a history of suicide attempts, gestures, or ideations. AR 378. Plaintiff was not receiving any treatment beyond medication for mental disorders and his symptoms may have been exaggerated. AR 381. The

11

1  lack of psychiatric treatment here suggests that Plaintiff's depressive symptoms would not
2  significantly interfere with her ability to work.

3  In challenging the ALJ's findings with respect to Dr. Nikkel's opinion, Plaintiff makes much
4  of the ALJ's finding that "Plaintiff could have been exaggerating symptoms." AR 31;(Doc. 14 at 18).
5  According to Plaintiff, the ALJ failed to give Dr. Nikkel's statement a fair reading which stated in full
6  "the claimant may have been exaggerating symptoms, or he is severely impaired cognitively. The
7  claimant did not know typical information, such as how many legs a dog has." AR 381. Plaintiff's
8  argument here is misguided. Dr. Nikkel noted that upon examination, Plaintiff's thought processes
9  were logical and goal-oriented, speech was normal, and articulation was normal. AR 379. However,
10 during his examination, Plaintiff, a former fruit picker, was unable to answer several basic questions
11 including identifying the differences and or similarities between apples and oranges. Plaintiff was also
12 unable to add "2+2" and "4+4." AR 380. Plaintiff was further unable to spell "dog" and he could not
13 state how many legs a dog has. AR 380. The ALJ rationally relied on Dr. Nikkel's belief that
14 Plaintiff was exaggerating his symptoms. A statement that Dr. Nikkel found would only be untrue if
15 Plaintiff was found to be severely cognitively limited; a factor that is in no way supported by the
16 record, nor alleged by Plaintiff. If Plaintiff's cognitive abilities were that limited, the ALJ could
17 logically conclude that Plaintiff would have sought additional and specialized mental health treatment
18 beyond his depression. For this reason, it was not error for the ALJ to rely on Dr. Nikkel's finding
19 that Plaintiff's symptoms were exaggerated. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)
20 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that
21 must be upheld."). Considered as a whole, this was a legitimate and specific basis to doubt Plaintiff's
22 statements about the degree of his depressive symptoms and to assign less weight to Dr. Nikkel's
23 opinion. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is
24 susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the
25 ALJ's conclusion must be upheld.").

26 Finally, Plaintiff argues that the ALJ erred when he discounted Dr. Prince's opinion because
27 "he did not provide a definition for the term moderate." AR 32. Even if it was error for the ALJ to
28 discount Dr. Prince's opinion because he failed to define the term "moderate," (AR 32), this error, if

12

1  any is harmless. Dr. Prince's report did not provide a customized definition for "moderate" limitations,
2  so he presumably used that word consistent with the Social Security Administration's definition. Form
3  HA-1152-U3 defines a "moderate" limitation as "[t]here is more than a slight limitation in this area,
4  but the individual can still function satisfactorily." Office of Disability Adjudication and Review,
5  Social Security Administration, Form HA-1152-U3, Medical Source Statement of Ability to Do Work-
6  Related Activities (Mental) (emphasis added); *Cantu v. Colvin*, 2015 U.S. Dist. LEXIS 29367, *45-46
7  (N.D. Cal. Mar. 10, 2015) (citing Form HACase 1152-U3 as providing the definition of a "moderate"
8  limitation). In other words, Dr. Prince opined that despite his "mental health functioning" Plaintiff
9  "can still function satisfactorily." Such a limitation is not inconsistent with the ALJ's finding that
10 Plaintiff does not suffer from a significantly limiting mental health condition.

11        Regardless, the ALJ provided other specific and legitimate reasons for affording reduced
12 weight to Dr. Prince's opinions. The ALJ gave little weight to the opinion of Dr. Prince because
13 Plaintiff's failure to seek mental health treatment and his logical and goal–oriented thought process did
14 not support Dr. Prince's assigned limitations. Plaintiff's failure to seek mental health treatment is a
15 specific and legitimate reason to discount Dr. Prince's testimony. *Meanel v. Apfel*, 172 F.3d 1111,
16 1114 (9th Cir. 1999) (ALJ properly considered failure to request serious medical treatment for
17 supposedly excruciating pain); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (failure to assert
18 good reason for not seeking treatment can cast doubt on claimant's sincerity); *Swinscoe v. Astrue*,
19 2012 U.S. Dist. LEXIS 84190, 2012 WL 2317550, **22-23 (E.D. Cal. June 18, 2012) (J. McAuliffe)
20 (It was proper to discount mental impairment claims when the evidence in the record did not establish
21 a legitimate excuse for failing to seek treatment). Further, much like Dr. Nikkel's opinion, Plaintiff's
22 "logical and goal oriented thought process" was inconsistent with a mental impairment disability
23 finding. It was therefore not error for the ALJ to give Dr. Prince's opinion reduced weight.

24        For the reasons stated above, the Court will not reverse or remand the ALJ's decision for
25 failure to properly weigh the medical opinion testimony.

26 **B.    The ALJ Gave Sufficient Reasons to Reject Plaintiff's Subjective Testimony**

27        Next, Plaintiff argues that the ALJ failed to provide clear and convincing evidence for finding
28 his subjective testimony not credible. The Court disagrees.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ rejected Plaintiff's subjective symptom testimony for three clear and convincing reasons. First, in discounting Plaintiff's overall credibility, the ALJ noted that while Plaintiff claimed he forgot how to speak English, he completed the "10th grade in the United States," and he was overheard speaking English in the hearing lobby. AR 33. Relying on this personal observation, the ALJ found that the questions related to whether Plaintiff could speak English "detracted from the credibility of his allegations." AR 32. This was a proper reason to discount Plaintiff's credibility. The Ninth Circuit has determined that, in assessing a claimant's credibility, an ALJ may rely upon "ordinary techniques of credibility evaluation," including the ALJ's personal observations of the claimant at the administrative hearing. *See, e.g., Thomas*, 278 F.3d at 960 (determining that ALJ properly relied in part on claimant's demeanor at hearing in assessing credibility); *Drouin v. Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (observations of ALJ during the hearing, along with other evidence, is substantial evidence for rejecting testimony). Here, the ALJ was entitled to consider observations that Plaintiff could speak English—which contradicted his hearing testimony—as one factor in finding Plaintiff not fully credible.

Second, in making her adverse credibility finding, the ALJ considered Dr. Nikkel's statement that Plaintiff may have been exaggerating his symptoms. AR 32, 381. *See Thomas*, 278 F.3d at 960

(ALJ rejected claimant's testimony based in part on evidence of symptom exaggeration). Plaintiff urges this Court to adopt an interpretation of Dr. Nikkel's observation that Plaintiff's exaggerated symptoms could be attributed to severe cognitive deficiencies. (Doc. 14 at 22). However, as discussed above, an ALJ's interpretation need only be rational, not exclusive. *See Burch*, 400 F.3d at 680-81 ("Although the evidence may also admit of an interpretation more favorable to [claimant], the ALJ's interpretation was rational, and [w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"); *Young v. Heckler*, 803 F.2d 963, 967 (9th Cir. 1986) ("it is the function of the [ALJ] to resolve questions of resolutions of conflicts in the evidence"). It was rational for the ALJ to infer that the most logical reading of Dr. Nikkel's examination was that Plaintiff was exaggerating his symptoms. There is no evidence in the record to suggest that Plaintiff, who finished the 10th grade in the United States, is so cognitively limited that he is unable to add "2+2" or spell "dog." AR 381. The inference that Plaintiff is exaggerating his symptoms is thus a reasonable inference to draw. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ may draw reasonable inferences logically flowing from the record).

Finally, the ALJ discredited Plaintiff's impairment testimony because although he alleged severe physical restrictions, significant limitations are not supported by the record. AR 32. The ALJ noted that Plaintiff testified that he could lift only 10 pounds, sit for 10 minutes, stand for 8-10 minutes, walk three blocks, and used a cane daily. AR 32, 52-53. However, the ALJ referenced the lack of diagnostic evidence corroborating the extent of Plaintiff's reported impairments; in particular, he noted that, upon examination, Plaintiff demonstrated a normal gait without an assistive device, full motor strength, and no muscle atrophy. AR 374-75. Given the level of pain and dysfunction alleged by Plaintiff, it was reasonable for the ALJ to discount Plaintiff's subjective complaints based on the lack of corroborating evidence in the record. AR 32.

Ultimately, the ALJ's credibility findings with respect to Plaintiff's subjective symptom testimony were thoroughly explained and supported. Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is supported by substantial evidence in the record, this Court does not second-guess that decision. *Fair*, 885 F.2d at 604. By considering Plaintiff's exaggerated symptoms,

1 inconsistent English language abilities and the objective medical evidence, the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective complaints. Thus, the ALJ satisfied her burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958. Although Plaintiff may disagree with the specific findings, the findings were supported by clear and convincing evidence in the record and the Court will not second-guess them. *Thomas*, 278 F.3d at 959. Therefore, Plaintiff's challenge on this ground fails.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security, and against Plaintiff, Isreal Rivera.

IT IS SO ORDERED.

Dated: **March 16, 2016**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE